**Mrs. Kent N. HUNT, Petitioner,**

v.

**The CITY OF SAN ANTONIO, Respondent.**

**No. B–2407.**

Supreme Court of Texas.

Feb. 3, 1971.

W. R. Smith, San Antonio, for petitioner.

Kampmann, Kampmann, Church & Burns, Harry J. Burns, Howard C. Walker, San Antonio, for respondent.

McGEE, Justice.

Plaintiff brought this action against the City of San Antonio to have the City's Ordinance No. 33259, amending the City's Comprehensive Zoning Ordinance by rezoning Lots 1 and 2, Block 8, New City Block 3264 from "A-Single Family Dwellings" to "D-Apartments," declared null and void, and for a permanent injunction enjoining the City from granting any permit for the construction on or the use of said lots other than as allowed in an "A" zone. The trial court rendered judgment for plaintiff. The Court of Civil Appeals reversed and rendered judgment for the defendant. 458 S.W.2d 952. We reverse the judgment of the Court of Civil Appeals and affirm the judgment of the trial court.

This case grew out of the second attempt in recent years to have the two lots in question rezoned. The lots, now vacant, are located on the southeast corner of the intersection of San Pedro Avenue and

West Summit Street. Plaintiff owns a home in the immediate vicinity of the lots, across Summit and down the street a few houses. (See plat). The San Antonio

Comprehensive Zoning Ordinance was enacted in 1938. The block containing the lots in question (3264), as well as the blocks to the north (3263), northeast (3260), east (3261) and southeast (3059), were all zoned for "A" use. The only non-conforming use in this "A" zone was and is a small apartment house located on the northeast corner of the intersection of San Pedro and Summit, directly north of

the lots in question. It was in existence at the time the 1938 ordinance was passed and thus is a prior non-conforming use.

The first attempt to obtain a special exception to the Comprehensive Zoning Ordinance for these lots was made by a group of doctors in 1959. They sought to use the land for a non-commercial parking lot. The exception was granted by the City's Board of Adjustment but was declared null and void by the 73rd District Court of Bexar County.

In January of 1965 two doctors requested the City to reclassify the two lots from an "A" to a "D" designation. The city council, after a hearing, passed Ordinance No. 33259, so rezoning the lots. In an "A" district the only permitted uses are one family dwellings and accessory buildings including garages and servant quarters (garage apartments), public parks, playgrounds, schools and colleges. In a "D" district various uses are permitted, including: hospitals, clinics, apartment houses, private clubs, fraternity and sorority houses, child and day care nurseries, etc. The doctors in this case intend to build a clinic on these two lots. There are other zoning classifications under the comprehensive plan, but none of them are involved here. The plat included in this opinion reflects the uses to which the other property in the area has been put.

The power of the City of San Antonio to pass the basic zoning ordinance is not questioned. Articles 1011a[1] et seq. grant to a city the power to regulate property uses by zoning "[f]or the purpose of promoting health, safety, morals * * * or the general welfare of the community * * *" and provide how the regulations, restrictions and boundaries may be modified. Article 1011c requires that "[s]uch regulations shall be made in accordance with a comprehensive plan * * *."

■ There are certain well established legal principals which guide us in passing on the validity of the ordinance here in question. A city ordinance is presumed to be valid, and this presumption applies to amendatory zoning ordinances as well as original comprehensive zoning ordinances. In either case the courts have no authority to interfere unless the ordinance is unreasonable and arbitrary—a clear abuse of municipal discretion. If reasonable minds may differ as to whether or not a particular zoning ordinance has a substantial relationship to the public health, safety, morals or general welfare, no clear abuse of discretion is shown and the ordinance must stand as a valid exercise of the city's policy power. An "extraordinary burden" rests on one attacking the ordinance to show that no conclusive or even controversial issuable facts or conditions exist which would authorize the governing board of the municipality to exercise the discretion confided to it. This query presents a question of law, not a question of fact. City of Waxahachie v. Watkins, 154 Tex. 206, 275 S.W.2d 477 (1955). The presumption that an amendatory ordinance is valid, however, disappears if it is shown that a city acted arbitrarily and unreasonably rather than on the basis of changed conditions (often referred to as the "issuable facts"). Weaver v. Ham, 149 Tex. 309, 232 S.W.2d 704 (1950). Spot zoning is widely condemned. Weaver v. Ham, supra, Barrington v. City of Sherman, 155 S. W.2d 1008 (Tex.Civ.App.1941 writ ref'd w. o. m.).

The City relies on the following changes occurring after 1959[2] in the area surrounding the two lots in question: (1) a parking lot has been built on the northwest corner of San Pedro and Summit catercorner to the lots; (2) a theatre parking lot has been built one block south of the lots; (3) enrollment has increased at the junior high school across San Pedro and to the

---

1. Statutory references herein are to Vernon's Annotated Texas Civil Statutes.

2. The parties stipulated that there had not been any material change prior to 1959 which would justify rezoning.

south of the lots; (4) San Pedro Avenue has been widened to accommodate four lanes of traffic; (5) traffic has increased on San Pedro Avenue in the vicinity of the lots.

The parking lot referred to in the first alleged change is a private, non-commercial lot for the patients of the clinic located on the northwest corner of the San Pedro-Summit intersection. It is in a "D" zone and as such is a proper use. The theatre parking lot is also in a zone which authorizes its use. It is difficult to see how a change in a "D" zone from one "D" use to another "D" use could be such a material change of condition as is necessary to justify rezoning part of an adjacent "A" zone.

The school is likewise located in a "D" zone; hence such use was authorized under the comprehensive plan (it would, in fact, be permissible in an "A" zone) and an increase in enrollment, no doubt contemplated when the comprehensive plan was enacted, would not be such a material change as to justify rezoning from an "A" use to something less.

This leaves only two changes to consider: the widening of San Pedro Avenue and the increased traffic on it. In Weaver v. Ham, supra, McCullough Street had been widened and traffic had increased, no doubt because the population of San Antonio had more than doubled since the enactment of the comprehensive plan, yet it was held that there were no issuable facts to support rezoning. These last two changes standing alone, in our opinion, are insufficient to justify the rezoning of a single "spot" of land along San Pedro. Plaintiff quite rightly asks why, if increased traffic is an issuable fact, have *only two* lots in the large "A" zone on which San Pedro borders been rezoned? The City relies on Clesi v. Northwest Dallas Improvement Ass'n, 263 S.W. 2d 820 (Tex.Civ.App.—1953 writ ref'd n. r. e.) wherein there is language to the effect that a "tremendously increased volume of traffic" would evidence, without more, enough of a change of conditions to constitute a reasonable basis for the rezoning involved. Assuming, without so holding, that that language is correct and was necessary to the judgment in *Clesi*, the rezoning here is still not sustainable. First, there was no evidence of a "tremendous" increase in traffic. Second, and more important, in *Clesi* several blocks of lots (all of which paralleled the street on which traffic had tremendously increased) were rezoned. Here only two lots, only one of which touches San Pedro, have been rezoned. This is truly "spot" zoning.

It should be noted that the integrity of the "A" zone classification of this area has previously been protected by this Court in Weaver v. Ham, supra. The only distinction, if it is one, between the facts of that case and this case is that the lots there involved were in the center of the "A" zone district, whereas the lots in this case are on the perimeter. We feel that this is a distinction without a difference. If the zoned area may be encroached upon from the edge, the effect thereof is to cause the comprehensive plan to collapse like the fall of a row of dominoes when the first in the row is knocked over.

The judgment of the Court of Civil Appeals is reversed, and that of the trial court is affirmed.