Mrs. M. D. McWHORTER et
al., Appellants,

v.

The CITY OF WINNSBORO, Texas,
et al., Appellees.

No. 825.

Court of Civil Appeals of Texas,
Tyler.

June 12, 1975.

Rehearing Denied July 24, 1975.

Paxton, Whitaker & Parsons, Melvin D. Whitaker, Frank B. Murchison, Palestine, for appellants.

Carlock & Taylor, Winnsboro, for appellee City of Winnsboro.

Roberts, Harbour, Smith, Harris, French & Ritter, Earl Roberts, Jr., Longview, for appellee Snider Industries, Inc.

DUNAGAN, Chief Justice.

This is a zoning case.

In 1965, the City of Winnsboro passed a comprehensive zoning law. In August, 1974, the City passed an amendatory zoning ordinance changing a R–900–F residential district to a B–2–F secondary highway business district. Mrs. M. D. McWhorter and others have brought suit asking that the ordinance be declared invalid and seeking a temporary injunction to prevent issuance of any building permits for the area. The trial court, sitting without a jury, denied all the relief that the plaintiff-appellants had sought and gave judgment to the city. Findings of fact and conclusions of law were requested and filed.

Appellants present seven points of error. The only attack upon the court's findings of fact is found in point of error number 7 wherein appellant asserts that "the trial court's findings of fact No. 7(a) and (e)" has no support in the evidence and "such findings are against the greater weight of credible evidence * * *." The other points of error attack the court's conclusions of law. However, all the points are presented under a single argument, it being that the amendatory ordinance is illegal and void because it amounted to unauthorized spot zoning.

We affirm the judgment of the trial court.

In July, 1965, the city of Winnsboro enacted a comprehensive zoning law which created eleven different zones throughout the city. Seven of the zones created were residential and four were business zones. The block involved in this suit is in the city of Winnsboro and is bounded by East Pine Street on the south, Connie Mae Street on the east, Elm Street on the north and Beech Street on the west. The particular tract involved is approximately the northern two-thirds of this block consisting of 5.29 acres and is known locally as "the Mullinax Homeplace." Under the original 1965 zoning ordinance, this 5.29 acres was zoned R–900–F residential while the southern one-third, separated by a barbed wire fence, was zoned B–2–F, secondary business district. The areas to the north, east and west are all zoned for residential use and have been so since the original comprehensive act took effect in 1965. Southwest of the concerned areas and across Beech Street is an abandoned ice house which was in existence

at the time the 1965 ordinance was enacted and is thus a prior non-conforming use. Directly north of the ice house on Beech Street are three residences which face the Mullinax homeplace. Across Pine Street to the north are residences also. The land directly across from the 5.29 acres on Connie Mae Drive is zoned for residential use but is presently vacant. South of the barbed wire fence which divides the Mullinax place from the B–2–F zone is the City Farmer's Market, a storage shed and a power substation. Four or five months prior to August 19, 1974, Snider Industries purchased the Mullinax place with the intention of using the area as a woodyard and yard for the storage, distribution and shipment of timber, lumber and wood products. Original attempts to rezone the area to permit this use were made on June 10 and July 17, 1974, but those attempts were beset with difficulties in statutory procedure. However, on August 19, the City Council and the City Planning and Zoning Commission held a joint meeting and public hearing to determine the rezoning question. After the hearing, the City Council, with the advice of the Planning and Zoning Commission voted to rezone the 5.29 acres from R–900–F residential to a B–2–F secondary highway business district.

■ A zoning ordinance is an exercise of the legislative power of the City Council and must be presumed to be valid. *City of Bellaire v. Lamkin,* 159 Tex. 141, 317 S.W.2d 43 (1958). An "extraordinary burden" rests on a party attacking an ordinance to show that no conclusive or even controversial issuable facts or conditions exist which would authorize the City Council to exercise the discretion confided to it. *City of Waxahachie v. Watkins,* 154 Tex. 206, 275 S.W.2d 477 (Tex.Sup., 1955). This presumption of validity applies as well to an amendatory ordinance. *City of Waxahachie v. Watkins, supra.* However, a zoning regulation should be amended only when public interest requires the amendment, i. e., only when the amendment has a substan-

tial relationship to the health, safety or general welfare of the community. *Reichert v. Hunter's Creek Village,* 345 S.W.2d 838 (Tex.Civ.App., Houston, 1961, writ ref., n. r. e.); *Lubbock v. Stubbs,* 278 S.W.2d 519 (Tex.Civ.App., Amarillo, 1954, writ ref., n. r. e.). The determination of when the public interest does require an amendment of a zoning ordinance is within the legislative discretion of the municipality and if reasonable minds may differ as to whether or not the amendatory ordinance has substantial relation to the public health, safety, morals or general welfare, no clear abuse of discretion is shown, and the amendatory ordinance must stand as a valid exercise of the city's power. *Nichols v. Dallas,* 347 S.W.2d 326 (Tex.Civ.App., Dallas, 1961, writ ref., n. r. e.).

■ On the other hand, the Supreme Court has condemned spot zoning, where a small area is singled out for different treatment from that accorded to similar surrounding land without any showing of justifiable changes of condition and especially when such preferential treatment is given in an amendatory ordinance which is contrary to a long-established comprehensive zoning plan. *Thompson v. City of Palestine,* 510 S.W.2d 579 (Tex.Sup., 1974).

■ Each case involving possible spot zoning must be decided by an examination of the facts in the particular case. *Hunt v. City of San Antonio,* 462 S.W.2d 536 (Tex. Sup., 1971); *Weaver v. Ham,* 149 Tex. 309, 232 S.W.2d 704 (1950). However, in those cases in which unjustifiable spot zoning has been determined, a common element present is that each has an area singled out for treatment differing from that of similar surrounding land, thereby creating an island having no relevant difference from its neighbor. *Thompson v. City of Palestine, supra; Weaver v. Ham, supra.*

In *Thompson,* the area concerned was surrounded by residences for seven blocks to the north, five to six blocks west, ten to

twelve blocks east and six blocks south. In *Weaver*, the concerned block A–54 was a "* * * tract of land near the center of the Zone A district, and is surrounded by said Zone A District * * *."

The case of major distinction and one relied on by appellants is *Hunt v. City of San Antonio, supra.* There, the area concerned was on the perimeter of the "A" zone, but was separated from the adjoining "D" zone by a busy, four-lane thoroughfare. In its determination that the concerned area could not be rezoned from "A" to "D" without creating illegal spot zoning, the court held, when considering the location of the area,

"* * * that this is a distinction without a difference. If the zoned area may be encroached upon from the edge, the effect thereof is to cause the comprehensive plan to collapse like the fall of a row of dominoes when the first in the row is knocked over."

This court is of the opinion, however, that a difference does in fact exist distinguishing this case from *Hunt.* Here, there is no major thoroughfare dividing one zone from another. The 5.29 acre tract is actually a part of an entire block, which is divided only by a barbed wire fence, such fence serving as the boundary between the B–2–F zone to the south and the R–900–F zone. Consequently, the rezoning of the R–900–F area is but an extension or enlargement of the B–2–F zone and not an area *surrounded* by land of different use classification as in *Thompson v. City of Palestine, supra; Weaver v. Ham, supra; Goddard v. Stowers,* 272 S.W.2d 400 (Tex. Civ.App., Dallas, 1954, no writ); and *Burkett v. City of Texarkana,* 500 S.W.2d 242 (Tex.Civ.App., Texarkana, 1973, writ ref., n. r. e.).

In *City of Waxahachie v. Watkins, supra,* suit was brought to have declared void two amendatory zoning ordinances of the City of Waxahachie rezoning a tract of land adjacent to a local retail district from residential to business district. The Supreme Court, in upholding the validity of the rezoning, discussed several factors considered in its decision, one being "its contiguous relation and unitization with the tract lying immediately to the east already zoned for business purposes." While several other factors were also considered by the court, we feel it significant that the contiguous relation with other business property was one of the elements considered by the court in upholding the amendments.

Several other jurisdictions also consider a contiguous relation the controlling factor in determining whether the amendatory zoning ordinance constitutes spot zoning. In *Putney v. Township of Abington,* 176 Pa. Super. 463, 108 A.2d 134, the Pennsylvania Court held that the mere extension of an existing commercial area is not spot zoning. The South Carolina Supreme Court held in *Bob Jones University, Inc. v. City of Greenville,* 243 S.C. 351, 133 S.E.2d 843 (1963), that the granting of a special zoning permit extending an area zoned for commercial use to embrace adjacent property zoned for residential use does not constitute spot zoning. Similar holdings are found in Georgia and Maryland. *Neal v. City of Atlanta,* 212 Ga. 687, 94 S.E.2d 867; *Eckes v. Board of Zoning Appeals,* 209 Md. 432, 121 A.2d 249.

■ With these considerations in mind and remembering the factual distinction of the instant case from *Hunt v. City of San Antonio, supra,* we are of the opinion that the area rezoned is not a spot zone.

In order to uphold the position of the appellants, we would be compelled to hold that there were no controversial or issuable facts or conditions existing which would authorize the City Council of Winnsboro to exercise a discretion in determining whether or not rezoning is necessary for this area. We would also be compelled to say as a matter of law that the property in question is unsuitable for business purposes and is in fact residential property. We do not believe either proposition to be sound when

we consider the record as presented to us. *City of El Paso v. Donohue,* 163 Tex. 160, 352 S.W.2d 713 (1962).

Many factors supporting the action of the City Council in approving this amendatory ordinance appear affirmatively in the record. The trial court, in its findings of fact, in part, found the following to support its judgment:

"7. The following changes of condition in the area of the 5.29 acres have taken place since the adoption of the comprehensive zoning ordinance in 1965:

"(a) There has been a substantial increase in the traffic on Connie Mae Drive, Beech Street and FM Highway No. 1445, all of which run by the 5.29 acres;

"(b) The City of Winnsboro has established and is operating a farmer's market adjacent to and immediately south of the 5.29 acres;

"(c) The house situated on the 5.29 acres has been vacated and the entire 5.29 acres is vacant property at the present time;

"(d) No attempt has been made since 1965 to develop the 5.29 acres for residential purposes;

"(e) The 5.29 acres has grown up in weeds and has substantial drainage problem.

"8. There will be extensive benefit to the economy of the City of Winnsboro without disrupting the City's comprehensive zoning plan and without detriment to the neighborhood."

From these findings, the court drew, in part, the following conclusions:

"1. The amendatory zoning ordinance adopted by the City Council of the City of Winnsboro on August 19, 1974, was and is valid and not void.

"* * *

"3. The amendatory zoning ordinance adopted by the City Council of the City of Winnsboro on August 19, 1974 was and is

in harmony with a comprehensive plan for the promotion of health, safety, morals and the general welfare of the community.

"4. That the City Council of the City of Winnsboro in adopting its amendatory zoning ordinance of August 19, 1974 extended the existing B–2–F Secondary Highway Business Zoning District to include the 5.29 acres.

"5. The City Council of the City of Winnsboro in adopting the amendatory zoning ordinance of August 19, 1974 did not abuse its municipal discretion in rezoning the 5.29 acres to a B–2–F Secondary Highway Business District."

 We must first recognize the validity of those findings of fact enumerated by the trial court. When specific findings of fact and conclusions of law are filed, no additional findings are requested, and a statement of facts is also brought forward, the findings will be sustained if there is any evidence to support them. *Jackson v. Henniger,* 482 S.W.2d 323 (Tex.Civ.App., Austin, 1972, no writ); *Curtis v. Curtis,* 473 S.W.2d 636 (Tex.Civ.App., Tyler, 1971, no writ); *Gulf Freeway Lumber Co. v. Houston Investment Realty Trust,* 452 S.W.2d 39 (Tex.Civ.App., Houston, 14th Dist., 1970, no writ). All the required elements are present here and we conclude that there is evidence to support these findings.

Appellant questions the weight to be given to these findings upholding the zoning amendment. It is true that the farmer's market referred to in 7(b) is a produce market which was formerly the Farmer's Cotton Oil Company. It is located in the B–2–F zone, south of the 5.29 acres and was a permitted business use within that zone in 1965. Consequently, there has actually been no change. The property has simply been altered from one commercial use to another commercial use. In *Hunt v. City of San Antonio, supra,* one of the alleged changes was the construction, after the enactment of the comprehensive zoning ordi-

nance, of parking lots in a zone which authorized this use. There the court stated:

"* * * It is difficult to see how a change in a 'D' zone from one 'D' use to another 'D' use could be such a material change of condition as is necessary to justify rezoning of an adjacent 'A' zone."

Alleged changes 7(c), (d) and (e) concern the actual character of the 5.29 acres itself; that it is vacant, growing up in weeds and that no attempt has been made to develop the tract residentially. In the most recent case of *Thompson v. City of Palestine, supra,* the Supreme Court held that the fact that the area concerned was vacant and growing up in weeds was insufficient to warrant a change of zoning. The court stated: "* * * These were brought about by the owners themselves and are hardly the type of changes that are relevant." However, in this case, the ownership of the area has changed and the responsibility for creating these changes is difficult to assess. Further, the lack of any effort to develop the area for residential purposes is not actually a change but a conclusion based on the present condition of the area. Therefore, the weight to be given these alleged changes is difficult to evaluate.

Regarding the substantial increase in traffic, testimony was elicited to show a significant increase in the traffic on F. M. Highway 1448 and on both Beech Street and Connie May Street. The city relies on *Clesi v. Northwest Dallas Improvement Ass'n.,* 263 S.W.2d 820 (Tex.Civ.App., Dallas, 1953, writ ref., n. r. e.), to support its contention that increases in traffic would evidence, without more, enough of a change of conditions to constitute a reasonable ba-

sis for the rezoning involved. In both the *Hunt* and *Thompson* cases, an increase in traffic was also alleged to be a sufficient change of conditions to warrant rezoning. While in both *Hunt* and *Thompson,* it was held that the traffic change was insufficient to support amendatory zoning ordinance, in each of these cases there was only one street which had an increase in traffic that touched on the property sought to be rezoned. Here, we have three streets with significant increases in traffic touching the concerned area, thereby distinguishing this case from those two cases.

In each instance, the changes found by the court in the instant case are challenged because of a holding in a spot zoning case. As we have previously stated, we do not believe this to be a spot zoning case. In *Baccus v. City of Dallas,* 450 S.W.2d 389 (Tex.Civ.App., Dallas, 1970, writ ref., n. r. e., with opinion 454 S.W.2d 391), the court stated:

"* * * It has been held that such a change (of conditions) is not necessary if the rezoning ordinance bears a reasonable resemblance to the general welfare, to the orderly plan of zoning development and is not objectionable as constituting spot zoning. * * *"

In addition to those changes above listed, the record also reflects evidence of the benefit to the economy of Winnsboro without disrupting the comprehensive zoning plan, evidence that the best use of the 5.29 acres is for commercial purposes and evidence as to the improvement of the neighborhood's appearance by cleaning up the acreage and meeting certain conditions.[1] Taking the entire record into consideration, we are of the opinion that the ordinance bears a reasona-

---

1. Testimony also reveals that the land has been used recently as pasture for horses and cattle. As part of the zoning change, the owner of the acreage agreed to abide by the following conditions:

 (A) The owner must provide adequate water drainage on the property;

 (B) A suitable surface material must be placed on the property to minimize dust;

 (C) Fencing and hedging be placed around the property;

 (D) The route of all trucks going into and from the property be designated by the City Council; and

 (E) The owner of the property bear a fair share of the cost of maintenance of Connie Mae Drive.

ble relationship to the general health, safety and general welfare of the community. As we have previously stated, the record does not present a situation involving spot zoning.

Upon our consideration of the entire record, we conclude that the evidence is sufficient to support the findings and judgment of the trial court. All of appellants' points of error have been considered and are overruled.

The judgment of the trial court is affirmed.

Affirmed.