**CITY OF SAN ANTONIO, Appellant,**

v.

**O. H. LANIER et al., Appellees.**

**No. 15644.**

Court of Civil Appeals of Texas, San Antonio.

Sept. 29, 1976.

Rehearing Denied Oct. 27, 1976.

James M. Parker, City Atty., Jackson C. Hubbard, Asst. City Atty., San Antonio, for appellant.

Robert L. Strickland, Strickland & Dailey, San Antonio, for appellees.

BARROW, Chief Justice.

City has appealed from a judgment entered after a non-jury trial declaring that three acres of land, located at the corner of Sunset Road and N. New Braunfels Avenue, owned by appellees, was rezoned from "A" (single-family residential) to "R–3" (multi-family residential) by the City Council on March 20, 1975, by a vote of six votes in favor of the rezoning, two votes against such rezoning, and one member absent. The primary question presented is whether a three-fourths (¾) favorable vote of the Council was required to overrule the negative recommendation of the City Planning Commission.

This question has arisen because of the conflict between the restriction on changes as provided in Art. 1011e [1] and an ordinance adopted by the City in 1971.

Article 1011e provides:

Such regulations, restrictions, and boundaries may from time to time be

___

1. All statutory references are to Tex.Rev.Civ.Stat.Ann.

amended, supplemented, changed, modified, or repealed. In case, however, of a written protest against such change, signed by the owners of 20 per cent or more either of the area of the lots or land included in such proposed change, or of the lots or land immediately adjoining the same and extending 200 feet therefrom, such amendment shall not become effective except by the favorable vote of three-fourths of all the members of the legislative body of such municipality. The provisions of the previous section relative to public hearing and official notice shall apply equally to all changes or amendments.

In 1971 the Zoning Code of the City was amended [2] to require a three-fourths favorable vote of the Council to make a change in zoning where the Planning Commission recommends the change be denied as well as where there is a written protest against such change which is signed as provided in the statute.

The property in question includes all of Lots 1, 2, and 3 of New City Block 11886. O. H. Lanier and wife own two one-half acre tracts in Lot 1; Paul J. Bury, Andree Goddard, Harry B. Orem, Jr., and O. H. Clark, Jr., each own a tract in Lot 2; and W. H. Bagwell owns Lot 3. Lanier's two lots front on N. New Braunfels and the other tracts front on Sunset. This property was annexed by the City in 1952, and at that time the area was largely rural with only a few homes in existence. Since that time there has been substantial growth in the area and also a significant change in the use of the property. The biggest change was brought about by the rezoning and subsequent development of a large shopping center across New Braunfels immediately east of appellees' property. Also, the City has experienced a remarkable growth to the north and east of the 1952 city limits. The traffic has increased tremendously on both New Braunfels and Sunset streets and both have now been designated secondary thoroughfares by City.

This heavy traffic has limited the access to the single-family residences owned by appellees. For example, parking is prohibited on New Braunfels and it is dangerous to park in front of the residences that front on Sunset. This change in the neighborhood has affected its utility as single-family residences. Orem has moved from his home, but has been unable to sell the property. About three years ago, Lanier bought the property next to his home from an estate, but has been unable to rent or sell the second house.

In August 1974, appellees filed a joint application to change the zoning of this property from "A" to "R–3" and "B–2" (light business) for the property fronting on New Braunfels. The staff of the Planning Commission recommended a change of the entire tract to R–3 so as to provide a transitional use between the single-family residences to the west of appellees' property and the retail shopping center to the east. Appellees modified their application in accordance with the staff recommendation. Nevertheless, the Planning Commission did not follow the recommendation of its staff and recommended to the City Council that the application be denied. On March 20, 1975, the application was considered by the City Council and, after a full hearing, the Council voted to change the zoning from "A" to "R–3" by a vote of six in favor of and two against, with one member absent.

It is conceded by appellees that the application did not receive a favorable vote of three-fourths of the nine members of the City Council. See *City of Alamo Heights v. Gerety*, 264 S.W.2d 778 (Tex.Civ.App.—San Antonio 1954, writ ref'd n. r. e.). It is urged, however, that such was not required.

■ It is settled law that municipalities in Texas derive their power to adopt zoning regulations exclusively from the enabling statutes, Art. 1011a, et seq. *Spann v. City of Dallas*, 111 Tex. 350, 235 S.W. 513, 19 A.L.R. 1387 (1921). In approving zoning ordinances, cities are confined to the express authority delegated to them by the legislature. *Bolton v. Sparks*, 362 S.W.2d

2. Section 43–29(b)(3) of the City Code of San Antonio.

946 (Tex.1962); *Swain v. Board of Adjustment of City of University Park,* 433 S.W.2d 727 (Tex.Civ.App.—Dallas 1968, writ ref'd n. r. e.), *cert. denied,* 396 U.S. 277, 90 S.Ct. 563, 24 L.Ed.2d 465 (1970).

■ The Charter of the City adopted all of the zoning powers granted by the enabling statutes. Pursuant to the authority granted to it, City adopted a comprehensive zoning plan in 1938. Article 1011e authorizes cities to change the comprehensive zoning plan from time to time. However, this statute requires a three-fourths favorable vote only in the event the requisite number of landowners protest the change. It does not require a three-fourths favorable vote where the planning commission recommends that the requested change be disapproved. There is no statutory authority for City to require a three-fourths favorable vote because of the disapproval of the Planning Commission.

■ There is no statutory authorization for a city to delegate to its planning commission a part of its legislative power to amend the zoning ordinance. Nevertheless, City attempted to delegate legislative power to the Planning Commission in that this ordinance places a burden upon property owners of obtaining a three-fourths favorable vote to override a recommendation of the Planning Commission that the change be disapproved. Such requirement is an unlawful delegation of legislative power by City. *Swain v. Board of Adjustment of City of University Park, supra.*

■ The requisite number of adjoining landowners did not protest the change, and therefore, only a majority of the favorable votes of City Council was required to approve the change. *Appolo Development, Inc. v. City of Garland,* 476 S.W.2d 365 (Tex.Civ.App.—Dallas 1972, writ ref'd n. r. e.). Appellees secured such approval on March 20, 1975, and the trial court properly held that the change was approved at that time.

City urges that, in any event, its action in rezoning this property is arbitrary and void in that it is "spot" zoning. See *Thompson v. City of Palestine,* 510 S.W.2d 579 (Tex.

1974); *Hunt v. City of San Antonio,* 462 S.W.2d 536 (Tex.1971). Appellees urge by counterpoint that the City cannot complain of its own action. While we recognize that City's posture is somewhat unusual, we have been cited to no authority and have found none which would prevent us from determining the validity of the ordinance approving a change in the zoning of appellees' property.

In *Thompson* and *Hunt* the Supreme Court reaffirmed that arbitrary spot zoning by a city is void. In *Thompson* spot zoning is defined as " . . . where a small area is singled out for different treatment from that accorded to similar surrounding land without any showing of justifiable changes in conditions, and especially when such preferential treatment is given in an amendatory ordinance which is contrary to a long-established comprehensive zoning plan." In *Hunt* it is said that "[t]he presumption that an amendatory ordinance is valid, however, disappears if it is shown that a city acted arbitrarily and unreasonably rather than on the basis of changed conditions (often referred to as the 'issuable facts')."

The record here establishes significant changed conditions to justify an amendment in the rezoning of this tract. It has heretofore been pointed out that the area has undergone a significant change in recent years which substantially increases the traffic and affects the utility of the property as single-family residences. At the time the property was annexed by the City the area was largely rural in use. In 1952, Mr. Lanier had an orchard at the back of his 300-foot deep lot and also raised chickens. He uses only the front half of his two lots for residence purposes at the present time and the back half of the lot is in brush. The same situation exists on Lot 3 which is 375 feet deep. There is no access to the back of either lot other than from Sunset or New Braunfels streets. This limited access prevents the use of the back of Lot 1 and Lot 3 as a single-family residence.

It cannot be said that appellees' land has been singled out for preferential treatment.

There has been substantial rezoning of property in this area. A large retail shopping center is directly east of appellees' property. Other business properties are nearby. Also, there are several large apartment complexes in the immediate vicinity. Three of the four corners on Sunset at the next intersection west of appellees' property have been recently changed from residential to commercial zoned property. There is a three-acre commercial orchid business in the next block. The Senior Planning Administrator of City testified that a R–3 classification of this property would provide a transition buffer between the commercial property in existence just east of this property and the single-family property to the west.

We conclude from this record that the City Council did not abuse its discretion in rezoning appellees' property for multi-family use. *City of University Park v. Benners,* 485 S.W.2d 773 (Tex.1972); *City of Waxahachie v. Watkins,* 154 Tex. 206, 275 S.W.2d 477 (1955); *Burkett v. City of Texarkana,* 500 S.W.2d 242 (Tex.Civ.App.—Texarkana 1973, writ ref'd n. r. e.); *Clesi v. Northwest Dallas Imp. Ass'n,* 263 S.W.2d 820 (Tex.Civ.App.—Dallas 1953, writ ref'd n. r. e.).

The judgment of the trial court is affirmed.