CITY OF DALLAS, Appellant,

v.

DALLAS MERCHANTS & CONCESSIONAIRES ASSOCIATION, et al., Appellees.

No. 05–91–00449–CV.

Court of Appeals of Texas, Dallas.

Dec. 23, 1991.

Rehearing Denied Jan. 31, 1992.

John Rogers, Dallas, Susan Bleil, D.A. Blackburn, Texarkana, for appellant.

Richard M. Lannen, Andrew L. Siegel, Dallas, for appellees.

Before STEWART, LAGARDE, and WHITTINGTON, JJ.

## OPINION

STEWART, Justice.

The City of Dallas appeals from a declaratory judgment and injunction granted by the trial court on the ground that City Ordinance 19694, which zones the location of alcohol-related businesses in the South Dallas/Fair Park area, is unconstitutional. *See* TEX. CONST. art. XI, § 5. The trial court found that the Ordinance was preempted by and in conflict with the Texas Alcoholic Beverage Code.[1] In five points of error, the City contends that the trial court erred in: (1) finding the Ordinance in conflict with the Code; (2) failing to find that the Texas Legislature validated the Ordinance; (3) allowing Texas Package Store Association to intervene; (4) finding that Texas Package Store Association had standing to challenge the Ordinance; and (5) failing to require a supersedeas bond under Texas Rule of Appellate Procedure 47(f). We sustain the first point. Accordingly, we reverse and render.

---

1. TEX.ALCO.BEV.CODE ANN. §§ 1.01–251.81 (Vernon 1978 & Supp.1991), hereinafter the Code.

2. In 1986, there were about 350 alcohol-related businesses in the Community.

## FACTUAL BACKGROUND

In 1968, the Dallas City Council divided the City into thirty-four communities. From 1968 to 1972 it conducted studies and formulated plans for every community except the South Dallas/Fair Park Community (the Community). In 1986, the Council initiated the South Dallas/Fair Park Land View Study. Consultants studied the Community and met with Community leaders, residents, and business people to determine how to improve the quality of life for Community residents. The consultants concluded that the Community had been neglected for so long that it needed comprehensive economic development and housing plans to stabilize the Community.

Based on their studies, the consultants developed the South Dallas/Fair Park Neighborhood Preservation and Economic Development Plan. The Plan sets forth findings and recommendations on all aspects of housing, economic development, and zoning in the Community. One of the specific findings was that an excessive concentration of alcohol-related businesses exists throughout the Community.[2] Alcohol sales in 1986 were about $48 million, although Community residents could support sales of only about $4 million. This indicated that the vast majority of customers were from outside the Community. The concentration of alcohol-related businesses created problems of crime, drinking on the premises, litter, loitering, public intoxication, urinating in public, and harassment of children and elderly residents.

The Plan proposed housing and economic development programs for the Community, which included a comprehensive zoning scheme aimed to develop over-all single-family land use and zoning area boundaries for a predominantly residential community. The Plan recommended the addition of D–1 Liquor Control Overlays[3] to all nonresidential areas within 300 feet of residentially

---

3. Ordinance 18040, passed on November 9, 1983, established D–1 zoning within the City.

zoned properties not located on a freeway service road or other specified road. In a D–1 overlay area, a business may not sell alcoholic beverages unless a specific use permit (SUP) has been granted by the Council. The goal of this proposal was to control and to ultimately reduce the number of alcohol-related businesses in the Community. In February 1987, the Council passed a resolution adopting the Plan.

On September 30, 1987, the Council passed the Ordinance, creating new zoning categories for the Community in accordance with the Plan. The Ordinance imposes the D–1 overlay on certain areas of the Community and exempts certain areas that generally are outside of and do not affect the residential areas of the Community.

The Ordinance provides in part:

Any presently legal use or structure that does not conform to the use regulations or development standards applicable to its new zoning district classification established by this ordinance shall be a nonconforming use or structure, as the case may be, and shall be governed by the provisions in CHAPTER 51A relating to nonconforming uses and structures as they presently exist and as they may be amended in the future.

Pursuant to section 51A–4.704(a)(1) of the Dallas Development Code, any person may request that the Board of Adjustment establish a termination date for a nonconforming use. Upon receiving such a request, the board *must* set a termination date for the nonconforming use under a plan whereby the owner's actual investment in the structure prior to the time that the use became nonconforming can be amortized within a definite period. An alcohol-related business rendered nonconforming by the Ordinance has the following options: (1) stop selling alcoholic beverages and become a conforming use; (2) continue operating as a nonconforming use until an application requesting termination is filed with the Board; (3) obtain a SUP from the

Council; or (4) move to an exempted area of the Community.

On October 12, 1988, the Council approved Resolution 883306, which sets forth the guidelines for evaluating SUP applications for the sale or service of alcoholic beverages in areas of the Community affected by the D–1 overlay. The SUP guidelines include the following specific criteria:

(1) The business must be located on a major or secondary thoroughfare with no vehicular access to minor residential streets.

(2) The orientation of the business should be to the major or secondary thoroughfare with no direct frontal exposure to neighboring residential properties.

(3) Businesses not located on major thoroughfares should be separated from the nearest liquor-related business by a distance of at least 1,000 feet.

(4) The business shall not be located within 1,000 feet of any public or private school, church, daycare center, neighborhood serving park or community center, or adjacent to any residentially zoned property or to any residential use.

The Council, in its discretion, can grant a SUP to a business that fails to meet the guidelines. At the time of trial, no SUP had been granted to any of the alcohol-related businesses affected by the Ordinance, and about 300 alcohol-related businesses had been noticed for termination proceedings before the Board.

On June 25, 1990, Dallas Merchants and Concessionaires Association and individuals doing business in the Community filed this lawsuit against the City.[4] In their original petition and application for injunction, Merchants sought a declaratory judgment that the Ordinance conflicts with sections 109.31 through 109.33 and Title 6 of the Code and, therefore, is unconstitutional pursuant to article XI, section 5 of the Texas Constitution. *See* TEX. CONST. art. XI, § 5 (no ordinance shall contain any provision inconsist-

---

**4.** Merchants is an independent association of individuals and businesses operating stores licensed by the State of Texas and the City to sell beer, wine, and/or alcoholic beverages in the Community. The individual plaintiffs operate alcohol-related businesses in the Community and were noticed to appear before the Board of Adjustment to determine when the businesses would be terminated as nonconforming uses.

ent with the constitution or general laws of Texas). It sought injunctive relief to prevent the City from terminating alcohol-related businesses as nonconforming uses pursuant to the Ordinance. In their supplemental petition, Merchants contended that the Ordinance violated section 109.57 of the Code by discriminating against alcohol-related businesses based solely on the fact that they are licensed to sell alcoholic beverages and by imposing a more stringent set of restrictions on them.

On July 20, 1990, the trial court issued a preliminary injunction prohibiting the City from entering or enforcing any of the Board's termination orders issued pursuant to the Ordinance. On December 20, 1990, following a bench trial, the trial court granted Texas Package Store Association's motion to intervene and entered judgment in favor of the City. On March 27, 1991, the trial court entered a final judgment vacating its December 20, 1990, judgment; denying the City's motion to strike Texas Package's intervention; and granting Merchants [5] declaratory and injunctive relief. The trial court concluded that the Ordinance and SUP guidelines are unconstitutional because they: (1) impermissibly impose location restrictions on alcohol-related businesses; (2) attempt to regulate the sale of alcoholic beverages, other than beer, by ordinance; (3) discriminate against establishments holding permits issued under the Code; and (4) circumvent the voters' choice and right to determine through a local option election whether the Community will remain wet. The trial court permanently enjoined the City from enforcing the D–1 overlay in the Community. The City then perfected this appeal.

## CONSTITUTIONALITY OF THE ORDINANCE

In the first point, the City contends that the trial court erred in finding the Ordinance in conflict with the Code. Specifically, the City argues that section 1.06 does not preempt municipal zoning authority and that the Ordinance does not conflict with sections 109.31, 109.32, 109.33, 109.57, or Title 6 of the Code. Thus, it asserts, the Ordinance is constitutional. Merchants stated at oral argument that this suit challenges only the facial validity of the Ordinance; thus, we do not determine whether an application of this Ordinance to alcohol-related businesses in the Community would be constitutional.

■■■ An ordinance is presumed to be valid, and the burden of proof is on the party seeking to invalidate it. *Haynes v. City of Abilene,* 659 S.W.2d 638, 640 (Tex. 1983); *Chevron Oil Co. v. City of El Paso,* 537 S.W.2d 472, 476 (Tex.App.—El Paso 1976, no writ). Courts have no authority to interfere unless the ordinance is arbitrary, unreasonable, and a clear abuse of municipal authority. *Hunt v. City of San Antonio,* 462 S.W.2d 536, 539 (Tex.1971); *see City of Lucas v. North Tex. Mun. Water Dist.,* 724 S.W.2d 811, 820 (Tex.App.—Dallas 1986, writ ref'd n.r.e.) (op. on reh'g). Whether an ordinance is reasonable is a question of law for the court. *Hunt,* 462 S.W.2d at 539; *City of Lucas,* 724 S.W.2d at 820.

■■■ Home-rule cities possess the full power of self-government, provided that no ordinance "shall contain any provision inconsistent with the Constitution of the State, or of the general laws enacted by the legislature of this State." TEX. CONST. art. XI, § 5. As a home-rule city, the City looks to the legislature not for power to act, but *only* to determine whether the legislature has limited its broad constitutional power. *Burch v. City of San Antonio,* 518 S.W.2d 540, 543 (Tex.1975); *MJR's Fare v. City of Dallas,* 792 S.W.2d 569, 573 (Tex.App.—Dallas 1990, writ denied) (op. on reh'g). The mere fact that the legislature has enacted a law addressing a subject does not mean that the subject matter is completely preempted, as long as the city ordinance does not conflict with state law. *City of Richardson v. Responsible Dog Owners,* 794 S.W.2d 17, 19 (Tex.1990). In determining the validity of an ordinance and a state law dealing with the same

---

**5.** References to "Merchants" includes the Texas Merchants and Concessionaires Association, the individuals, and the Texas Package Store Association.

subject matter, courts must determine whether any reasonable construction leaving both in effect can be reached. *See id.*

■ A home-rule city has the authority to promulgate zoning ordinances regulating the use of property for certain purposes in aid of the general welfare, safety, public health, and morale of the community, subject to the limitation that no ordinance can be enacted that is inconsistent or conflicts with state statutes. *B & B Vending Co. v. City of Garland,* 711 S.W.2d 132, 134 (Tex.App.—Tyler 1986, writ ref'd n.r.e.); *see* TEX. CONST. art. XI, § 5. Legislative intent to limit the broad powers of home-rule cities must appear with unmistakable clarity. *City of Corpus Christi v. Continental Business Sys., Inc.,* 445 S.W.2d 12, 17 (Tex.Civ.App.—Austin 1969), *writ ref'd n.r.e. per curiam,* 453 S.W.2d 470 (Tex.1970). Such intent should not be implied.

The pertinent inquiry is whether the City, having all powers not denied to it by the Texas Constitution and the general laws of this State, has the power to zone the location of alcohol-related businesses licensed pursuant to the Code.

## A. Section 1.06

■ The trial court held that section 1.06 of the Code exclusively governs the regulation of alcoholic beverages and, thus, preempts the Ordinance. That section of the Code provides that, unless otherwise *specifically* provided, the Code exclusively governs "the *manufacture, sale, distribution, transportation, and possession* of alcoholic beverages." TEX.ALCO.BEV.CODE ANN. § 1.06 (Vernon 1978) (emphasis added). The City argues that the Code exclusively governs only the "manufacture, sale, distribution, transportation, and possession" of alcoholic beverages and, thus, does not preempt its power to zone the location of alcohol-related businesses. Merchants contends that, as a special law, the Code prevails over general laws such as the Local Government Code authorizing local zoning powers. *See* TEX.LOCAL GOV'T CODE ANN. §§ 211.001–211.013 (Vernon 1988).

■ The Code preempts regulation of alcohol-related businesses. It was not meant as a limitation on the police powers of cities granted to them under the home-rule amendment to the Texas Constitution. *City of Clute v. Linscomb,* 446 S.W.2d 377, 380 (Tex.Civ.App.—Houston [1st Dist.] 1969, no writ). The Code does not deny a home-rule city the power to restrict by zoning ordinances the sale of alcohol to certain areas within the city. *Young, Wilkinson & Roberts v. City of Abilene,* 704 S.W.2d 380, 383 (Tex.App.—Eastland 1985, writ ref'd n.r.e.); *Deckard v. City of Port Lavaca,* 491 S.W.2d 748, 751 (Tex.Civ. App.—Corpus Christi 1973, no writ); *Discount Liquors No. 2, Inc. v. Texas Liquor Control Bd.,* 420 S.W.2d 422, 425 (Tex.Civ. App.—Amarillo 1967, writ ref'd n.r.e.); *Louder v. Texas Liquor Control Bd.,* 214 S.W.2d 336 (Tex.Civ.App.—Beaumont 1948, writ ref'd n.r.e.). Where the sale of alcoholic beverages is not directly regulated, zoning schemes can be enacted in addition to the scheme set out in the Code. *SDJ, Inc. v. City of Houston,* 837 F.2d 1268, 1280 (5th Cir.1988) (interpreting Texas law). The power of a home-rule city to zone its territory for use purposes and the power of the state to regulate the liquor industry are not in conflict. *Massengale v. City of Copperas Cove,* 520 S.W.2d 824, 829 (Tex.Civ.App.—Waco 1975, writ ref'd n.r.e.).

■ A plain reading of the Ordinance reveals that it deals only with the dispersion of alcohol-related businesses in the Community based upon studies of what would best serve Community residents. It neither affects Merchants' ability to maintain or obtain a liquor license nor regulates the manner in which the alcohol-related business is conducted. Further, it does not regulate the manufacture, sale, distribution, or possession aspects of the business. It in no way regulates the business at that location.

Merchants cites *Courtney v. City of Sherman,* 792 S.W.2d 135 (Tex.App.—Dallas 1990, writ denied), to support its contention that the Code preempts the field of regulation of alcoholic beverages. That

case involved an ordinance requiring private clubs holding a liquor license to obtain a SUP and to conduct their business so as to produce gross revenues from the sale of food greater than gross revenues from the sale of alcoholic beverages. The Code, on the other hand, requires only that a private club provide regular food service adequate for its members and their guests. Contrary to Merchants' position, *Courtney* did not hold that section 211.013 of the Texas Local Government Code [6] denies home-rule cities the power to zone the location of alcohol-related businesses. Rather, the city's reliance on section 211.013 was misplaced under the facts of that case. Significantly, this Court stated in pertinent part:

> [Section 211.013] permits cities to *impose higher standards regarding the regulation of the location,* use, spacing, and physical nature and character of buildings and lots *and does not permit the regulation of the manufacture, sale, distribution, transportation, and possession of alcoholic beverages governed exclusively by the Code.*

*Id.* at 137 (emphasis added). Thus, this Court recognized the power of home-rule cities to enact the type of ordinance challenged in this case.

Further, the ordinance in *Courtney* dealt with matters clearly falling within the exclusivity provision of the Code. There, the city attempted, through its zoning powers, to make more onerous the requirements of operating a private club than required under the Code. *Id.* at 138. The Ordinance here, on the other hand, does nothing more than specify the location of alcohol-related businesses in the Community. Therefore, *Courtney* is not dispositive of the issue in this case.

Merchants also cites *B & B Vending,* in which the court struck down a city ordinance prohibiting the location of skill and pleasure coin-operated machines within 300 feet of a church, school, hospital, *or residentially zoned property. B & B Vending,* 711 S.W.2d at 133. Article 8814 of the Texas Revised Civil Statutes provided in part that

> *all* political subdivisions of this State *shall, for zoning purposes,* treat the exhibition of a music and skill or pleasure coin-operated machine as indistinguishable from the principal use to which the property where exhibited is devoted. *This does not prohibit* cities from restricting the exhibition of coin-operated amusement machines within three hundred (300) feet of a *church, school, or hospital.*

*Id.* at 134 n. 1 (emphasis added). The restaurant in question was located within 300 feet of residentially zoned property, but not within 300 feet of a church, school, or hospital. The court, relying on the rule of statutory construction that an exception makes plain the intent that the statute should apply to all cases not excepted, held that the ordinance, by placing an additional restriction on the location of coin-operated machines, impermissibly went beyond the express statutory exception. *Id.* at 134.

Each case depends upon an interpretation of the ordinance and the statute at issue. While we do not disagree with the holding in *B & B Vending,* it does not control the case at bar. The statute in *B & B Vending* expressly applied to all political subdivisions for purposes of zoning. The statute was a general mandate followed by a narrow exception. Section 1.06 here states the areas exclusively governed by the Code and provides no exceptions. Further, it makes no clear reference to zoning or location of alcohol-related businesses.

Had the legislature intended to preempt the power of home-rule cities to zone the location of alcohol-related businesses, it could have done so expressly. The legislature listed in section 1.06 the areas that it intended to preempt; it did not list zoning.

---

**6.** Section 211.013(a) provides, in pertinent part: If a zoning regulation adopted under this subchapter ... imposes higher standards than those required under another statute or local ordinance or regulation, the regulation adopted under this subchapter controls. If the other statute or local ordinance or regulation imposes higher standards, that statute, ordinance, or regulation controls. Tex.Local Gov't Code Ann. § 211.013(a) (Vernon 1988).

Nothing in section 1.06 of the Code unmistakably denies the City the power to zone the location of alcohol-related businesses, and this Court will not imply such preemption. *City of Corpus Christi,* 445 S.W.2d at 17.

Because the Ordinance does not attempt to regulate the manufacture, sale, distribution, transportation, and possession of alcoholic beverages, there is no conflict between the Ordinance and section 1.06. A reasonable construction of each allows both to be given effect because they are not inconsistent. We hold therefore that section 1.06 does not preempt the City's power to zone the location of alcohol-related businesses.

### B. Sections 109.31–109.33

■ The trial court also found that the Ordinance and SUP guidelines conflict with sections 109.31, 109.32, and 109.33 of the Code. Those sections provide:

§ 109.31. *Municipal Regulation of Liquor.*
A city by charter may prohibit the sale of liquor in all or part of the residential sections of the city.

§ 109.32. *Municipal and County Regulation of Beer.*
An incorporated city or town by charter or ordinance may prohibit the sale of beer in a residential area; and regulate the sale of beer and prescribe the hours when it may be sold, except the city or town may not permit the sale of beer when its sale is prohibited by this code.

§ 109.33. *Sales Near School, Church or Hospital.*
The governing board of an incorporated city or town may enact regulations applicable in the city or town, prohibiting the sale of alcoholic beverages by a dealer whose place of business is within 300 feet of a church, public school, or public hospital.

TEX.ALCO.BEV.CODE ANN. §§ 109.31–109.33 (Vernon 1978 & Supp.1991). The City contends that these sections are specific grants of authority, not limitations of home-rule cities' power. Merchants argues, on the other hand, that the above sections limit the City's regulation of alcoholic beverages. It contends, and the trial court found, that the Ordinance and SUP guidelines impermissibly conflict with sections 109.31 through 109.33 for the following reasons:

(1) *Section 109.31:* The restrictions are imposed by ordinance, not charter, and prohibit the sale of alcoholic beverages in commercially zoned areas within 300 feet of residential sections instead of prohibiting sales in residential sections only.

(2) *Section 109.32:* The ordinance is not limited to residential areas and purports to regulate and prohibit the sale of *all* alcoholic beverages instead of regulating the sale of beer only.

(3) *Section 109.33:* The Ordinance ties its location restrictions to any residentially zoned or used area rather than to churches, public schools, public hospitals, or residentially zoned areas only. The SUP guidelines impose a 1,000-foot distance requirement from churches, public or private schools, all hospitals, and community parks, violating both the 300–foot statutory distance requirement and categories and classes of use set by the Code.

■ Merchants' arguments misconstrue the scope of a home-rule city's power. The home-rule amendment to the Texas Constitution grants home-rule cities all the power of self-government not expressly denied them by the legislature. *See MJR's Fare,* 792 S.W.2d at 573. When the legislature "grants" specific powers, it is, in reality, only recognizing specific powers that the home-rule city already possesses under the Texas Constitution. Further, such grants confer power upon general-law cities, which have only the powers granted them by the legislature. To *limit* home-rule cities' constitutional powers, the legislature must *specifically withdraw* the particular power from them; it cannot *limit* these cities' power through a specific *grant.* Thus, we read sections 109.31, 109.32, and 109.33 to determine whether they impose any specific prohibition on the City's municipal zoning authority.

This Court has held that sections 109.31 through 109.33 do not prohibit a home-rule

city from enacting zoning ordinances that affect the location of alcohol-related businesses. *See id.* at 574. Nothing in these sections shows a clear legislative intent to restrict the method used by a home-rule city to accomplish the dispersion of alcohol-related businesses to protect the health, safety, welfare, and morale of its residents. Because the City possesses all the powers of self-government and sections 109.31 through 109.33 provide no prohibition against regulations addressing the dispersion of alcohol-related businesses, the City may enact an ordinance regulating the location and use of buildings and land within a zoning district in ways other than those specified in these sections.

As to the SUP criteria, they are not contained in the Ordinance; they were adopted separately by resolution. Although the SUP criteria may be a relevant consideration in determining whether the Ordinance is unconstitutional as applied, they are not relevant to our determination of the facial validity of the Ordinance. Further, as stated in *Courtney*, section 211.013 of the Local Government Code permits cities to impose higher standards regarding the regulation of the location and use of buildings. *Courtney*, 792 S.W.2d at 137; *see* TEX.LOCAL GOV'T CODE ANN. § 211.-013. Thus, any conflict between the Ordinance and sections 109.31 through 109.33 is permissible under section 211.013 of the Texas Local Government Code. *Abilene Oil Distribs., Inc. v. City of Abilene*, 712 S.W.2d 644, 645 (Tex.App.—Eastland 1986, writ ref'd n.r.e.) (zoning ordinance imposing higher standard of distance measurement than the Code permissible under section 211.013). Further, nothing in sections 109.31 through 109.33 clearly evidences an intent to limit home-rule cities' municipal zoning authority. These sections do not prohibit the City from imposing location restrictions not listed or from enacting an ordinance restricting the sale of all alcoholic beverages to certain areas of the City. The Code was not intended to limit the City's constitutional home-rule authority. A home-rule city can enact zoning schemes in addition to those set out in the Code as long as the sale of alcoholic beverages is not directly regulated. *SDJ, Inc.*, 837 F.2d at 1280. The trial court erred in finding that the Ordinance conflicts with sections 109.31, 109.32, and 109.33 of the Code.

## C. Section 109.57

The trial court held that the Ordinance is inconsistent with section 109.57 of the Code, which provides as follows:

§ 109.57 *Application of Code; Other Jurisdictions.*

(a) Except as is expressly authorized by this code, a regulation, charter, or ordinance promulgated by a governmental entity of this state may not impose stricter standards on premises or businesses required to have a license or permit under this code than are imposed on similar premises or businesses that are not required to have such a license or permit.

(b) It is the intent of the legislature that this code shall exclusively govern the regulation of alcoholic beverages in this state, and that except as permitted by this code, a governmental entity of this state may not discriminate against a business holding a license or permit under this code.

TEX.ALCO.BEV.CODE ANN. § 109.57(a) & (b) (Vernon Supp.1991). The trial court found that the Ordinance impermissibly discriminates against businesses holding permits issued pursuant to the Code. The City argues that the Ordinance does not impose a stricter standard on alcohol-related businesses than on nonalcohol-related businesses and that Merchants' position would mean that a business holding a state alcoholic beverage license is exempt from zoning regulations.

Merchants contends that, because the Ordinance applies only to alcohol-related businesses, it impermissibly discriminates against them under section 109.57. It further asserts that the enactment of sections 109.57 and 243.005 of the Texas Local Government Code in 1987, subsequent to the *Abilene Oil Distributors* and *Young, Wilkinson & Roberts* cases, "conclusively establish—*independent* of any *case* precedent—the primacy of the provisions of the

[Code] over the zoning powers granted by the [Texas] Local Government Code and relied upon by the City." (Emphasis original.) However, Merchants does not cite, and we have not found, any authority to demonstrate that the enactment of article 109.57 and amendment of section 243.005 were in response to the *Abilene Oil Distributors* and *Young, Wilkinson & Roberts* cases.

Section 109.57(a) prohibits a city from imposing "stricter standards on *premises or businesses*" licensed under the Code than are imposed on "similar *premises or businesses*" that are not required to have such a license or a permit. (Emphasis added.) Premises means "the grounds and all buildings, vehicles, and appurtenances pertaining to the grounds, including any adjacent premises if they are directly or indirectly under the control of the same person." TEX.ALCO.BEV.CODE ANN. § 11.49(a) (Vernon 1978). In light of this definition, we construe premises as used in section 109.57(a) to mean the *physical* premises. This is not the same as location, which is the position or site occupied by the alcohol-related business. *See* WEBSTER'S NEW COL-LEGIATE DICTIONARY 701 (9th ed. 1985). The Code's definition of premises has nothing to do with the *location* of the business. The Ordinance specifies only the location of alcohol-related businesses; it neither regulates nor places standards on the *physical* premises of businesses licensed under the Code or on the businesses themselves. For example, the Ordinance does not require that alcohol-related businesses have more square footage than nonalcohol-related businesses or that an alcohol-related business be constructed in a way not required of nonalcohol-related businesses. Section 109.57(a) prohibits the imposition of stricter standards on alcohol-related businesses or their physical premises, not their location.

■ Section 109.57(b) of the Code provides that the legislature intends that the Code exclusively govern the regulation of alcoholic beverages and that, except as the Code permits, no governmental entity may discriminate against a business licensed under the Code. The provisions of section 109.57(b) are a sweeping statement of policy. The section is *too general* to be construed as a limitation on the broad constitutional power of home-rule cities. *See City of Corpus Christi*, 445 S.W.2d at 17 (intent to limit broad powers of home-rule city must appear with unmistakable clarity). We do not read section 109.57 as changing the scope of the exclusivity provision found in section 1.06. Thus, the same reasoning set forth under our discussion of section 1.06 applies here.

Further, all property is held and all businesses are subject to the City's zoning authority. Zoning, by its very nature, involves some classification of businesses and land use. Courts have recognized that the sale of intoxicants is accompanied with objections not common to other types of commercial enterprises and that this constitutes valid grounds for a *separate classification or prohibition thereof in a given area*, for the protection of the health, morals, safety, peace, and convenience of the public. *T & R Assocs., Inc. v. City of Amarillo*, 688 S.W.2d 622, 625 (Tex.App.—Amarillo 1985, writ ref'd n.r.e.); *Eckert v. Jacobs*, 142 S.W.2d 374, 377 (Tex.Civ. App.—Austin 1940, no writ). Alcohol-related businesses are not excused from city ordinances relating to matters such as zoning. *See Banknote Club & Stan's Boilermaker v. City of Dallas*, 608 S.W.2d 716, 718 (Tex.Civ.App.—Dallas 1980, writ ref'd n.r.e.).

Concerning the SUP guidelines, a regulation imposing higher standards than those required by a statute, such as the Code, control. *See* TEX.LOCAL GOV'T CODE ANN. § 211.013. The legislature, in enacting section 109.57 of the Code, expressed no intent that section 211.013 of the Texas Local Government Code should not apply to zoning regulation of alcohol-related businesses. Had this been the intention, the legislature could have expressed it. As previously stated, we find nothing to indicate that section 109.57 overruled the *Abilene Oil Distributors* and *Young, Wilkinson & Roberts* cases. In *Abilene Oil Distributors*, the court held constitutional a zoning ordinance requiring a greater distance from schools than the Code on the basis

that section 211.013 of the Texas Local Government Code allows zoning regulations to impose a higher standard than those required by other statutes. *Abilene Oil Distribs.*, 712 S.W.2d at 646. In *Young, Wilkinson & Roberts*, the court upheld a zoning ordinance imposing greater and different distance requirements than the Code on the ground that the Code does not limit a city's zoning powers. *Young, Wilkinson & Roberts*, 704 S.W.2d at 382–83. Further, as previously stated, the SUP guidelines do not affect the facial validity of the Ordinance.

Had the legislature intended the addition of section 109.57 to the Code to restrict municipal zoning authority, it could have done so in express terms. For example, the statute in *B & B Vending* expressly applied to zoning. *B & B Vending*, 711 S.W.2d at 134. Nothing in section 109.57 expresses a clear intention to limit the powers of home-rule cities to separately classify alcohol-related businesses for purposes of zoning. Absent such clear, unmistakable intent, we will not imply such a limitation. *See City of Clute*, 446 S.W.2d at 380 (Code not intended as limitation on home-rule cities' police powers). We conclude that the trial court erred in finding that the Ordinance conflicts with section 109.57 of the Code.

### D. Title 6

■ The trial court found that the Ordinance violated the local option election provisions in Title 6 of the Code. Title 6 gives voters within an area, generally a justice of the peace precinct, the ability to determine whether the sale of alcoholic beverages will be prohibited. The Code vests voters with the right either to choose the desired type and classification of alcoholic beverages to be sold in their neighborhoods or to prohibit the sale of alcoholic beverages, provided that their will is expressed in a local option election. *See Fox v. Burgess*, 157 Tex. 292, 302 S.W.2d 405 (1957). The trial court found that the Ordinance and SUP stan-

dards impermissibly attempt to disenfranchise the choice of the voters of the areas affected by the Ordinance in violation of Title 6 of the Code.

The areas affected by the Ordinance are wet.[7] Merchants contends that the Ordinance, in effect, makes a major portion of the Community dry, frustrating the Community residents' local power of determination through a local option election, thereby disenfranchising Community voters. It argues that the local option election was designed to preclude this type of "tyranny of the majority." Merchants asserts that the Ordinance is an effort to circumvent state law requiring an election to revoke a wet area designation.

Courts have upheld the power of home-rule cities to zone alcohol-related businesses in wet areas of the city without holding local option elections. In *Discount Liquors*, a liquor store owner argued that a city ordinance zoning the location of alcohol-related businesses in a "wet" area was void and unconstitutional because it, among other things, conflicted with the local option provisions. *Discount Liquors*, 420 S.W.2d at 423. The court stated that neither the constitution nor the general laws of Texas denied the city the right to regulate the area in which liquor can be sold. *Id.* at 425.

In *City of Clute*, a liquor store owner argued that the city could not restrict the location of beer sales unless it held an election to amend the city charter. The court found no legal impediment to the right of a home-rule city to enact a valid ordinance restricting the sale of alcohol to certain areas without holding an election to amend the city charter. *City of Clute*, 446 S.W.2d at 381.

In *Louder*, the court was faced with the issue of whether a wet area annexed to a city becomes subject to the city's charter zoning regulations restricting liquor sales to certain specified areas. *Louder*, 214 S.W.2d at 340. Although the annexed area was wet, the city charter prohibited the

---

7. An area is a "wet area" as to an alcoholic beverage of a particular type and alcoholic content if the sale of that beverage is lawful in the area. Tex.Alco.Bev.Code Ann. § 251.71(a) (Vernon 1978).

sale of liquor in the newly annexed area. The court held that the Texas Liquor Control Board properly refused to renew the plaintiff-business' liquor licenses in the area. *Id.* at 341.

We read these cases to mean that home-rule cities may, by zoning ordinance, use their police powers to restrict the sale of alcoholic beverages to certain areas of the city without violating the local option provisions of Title 6. This is true even if the ordinance restricts the sale of alcoholic beverages in an otherwise wet area of the city. The Ordinance here has no effect on the wet or dry status of the Community. Alcoholic beverages still may be sold in the exempted areas of the Community. Further, alcohol-related businesses located in areas affected by the D–1 overlay may continue to operate if they obtain a SUP from the Council.

The Ordinance deals only with the dispersion of alcohol-related businesses. We conclude that Title 6 does not expressly limit a home-rule city's right to zone the location of alcohol-related businesses. Thus, it does not conflict with Title 6 of the Code.

## CONCLUSION

We find no conflict between the Ordinance and sections 1.06, 109.31, 109.32, 109.33, 109.57, or Title 6 of the Code. The Council passed the Ordinance to stabilize the Community and to alleviate the problems in the Community associated with an excessive concentration of alcohol-related businesses. The Ordinance was a valid exercise of the City's police power. We conclude that the Ordinance is facially constitutional. We sustain the City's first point.

Because we conclude that the Ordinance is facially constitutional, we do not address the City's remaining points of error.

We reverse the trial court's judgment and render judgment that the Ordinance is facially constitutional.