Court of Appeals
Fourth Court of Appeals District of Texas
San Antonio


# MEMORANDUM OPINION

No. 04-10-00872-CV

**CITY OF LAREDO**,
Appellant

v.

**RIO GRANDE H20 GUARDIAN**,
Appellee

From the 111th Judicial District Court, Webb County, Texas
Trial Court No. 2009CVQ000801
Honorable Raul Vasquez, Judge Presiding

Opinion by:    Marialyn Barnard, Justice

Sitting:        Phylis J. Speedlin, Justice
               Steven C. Hilbig, Justice
               Marialyn Barnard, Justice

Delivered and Filed:  July 27, 2011

AFFIRMED

This is an interlocutory appeal from the trial court's denial of the City of Laredo's ("the City") plea to the jurisdiction. On appeal, the City contends the trial court erred in finding appellee Rio Grande H20 Guardian ("Rio Grande") had standing and that its claims were ripe and not moot. The City also contends the trial court erred in granting a writ of mandamus requiring production of certain documents. We affirm the trial court's judgment.

**BACKGROUND**

The City is a home rule city, which means it operates under a municipal charter adopted or amended pursuant to article IX, section 5 of the Texas Constitution. *See* TEX. LOC. GOV'T CODE ANN. § 5.004 (West 2008). The City's regulatory authority is articulated in its city charter, and the charter stipulates that any development must conform to a comprehensive plan. The Laredo City Council adopted its Comprehensive Plan in 1991.

On February 17, 2009, the City held a public hearing for the introduction of Ordinance 2009-O-31, which amended the City's zoning map by rezoning 145.41 acres in Council District VII from R-1 (Single Family Residential) to M-1 (Light Manufacturing). On the same date the City held a separate public hearing for the introduction of a second ordinance that also affected zoning. The second ordinance, Ordinance 2009-O-32, sought rezoning of 70 additional acres in Council District VII from AG (Agricultural) to M-1. The City's Planning and Zoning Commission had previously recommended approval of the proposed changes. On March 2, 2009, both proposed ordinances were subjected to a "Final Reading," and then passed by the City Council.

A little more than two months after the new ordinances were passed, Rio Grande filed a declaratory judgment action against the City challenging the legality of the new zoning ordinances as violative of the City's Comprehensive Plan. Alternatively, Rio Grande alleged that if the ordinances were amendments to the City's Comprehensive Plan, then the ordinances should be declared void because the City violated the notice provisions of the Texas Open Meetings Act and section 24-2.1 of the City's Land Development Code. *See* TEX. GOV'T CODE ANN. § 551.041 (West 2004) (requiring governmental body to give written notice of date, hour, place, and subject of each meeting held by that governmental body). After filing suit, Rio

Grande also made multiple requests for public information to the City. These requests pertained to the pending lawsuit. As the City's designated public information coordinator, the Laredo City Attorney's Office is responsible for responding to requests for public information. According to the City, the City Attorney's Office consulted with the appropriate departments and council chambers regarding the requests, and then responded to each one with either responsive information or with a declaration that no such records existed.

Rio Grande subsequently filed amended petitions as well as a petition for writ of mandamus to compel the City to produce the public records Rio Grande claimed were not released in response to its previous requests for information. Rio Grande specifically sought production of e-mails pertaining to individual city council members. In response to Rio Grande's live petition, i.e., the third amended petition, and the petition for writ of mandamus, the City filed a motion for summary judgment. In its motion, the City argued: (1) the challenged ordinances are in compliance with the City's Comprehensive Plan; (2) Rio Grande's assertion that the ordinances were amendments to the Comprehensive Plan and were adopted without proper notice are moot because the City does not contend the ordinances are amendments to the Comprehensive Plan; rather, the City's action in adopting the ordinances is authorized by the City Charter, specifically article IX, section 9.04, and such action deems the Comprehensive Plan to be automatically amended; and (3) it fully complied with the law regarding Rio Grande's information requests, but in any event, Rio Grande had no standing to seek mandamus on the issue. Rio Grande filed a response to the motion, and after a hearing, the trial court denied the City's motion for summary judgment.

The City also filed a plea to the jurisdiction in which it asked the trial court to dismiss Rio Grande's lawsuit for want of subject matter jurisdiction. In its plea, the City argued Rio

Grande's pleading "on its face demonstrates[s] that it lacks the standing to bring this suit[,]" thereby depriving the trial court of jurisdiction. The City later amended its plea, retaining the standing argument, and adding arguments that Rio Grande's claims are not ripe and there is no longer a live controversy between the parties, i.e., Rio Grande's claims are moot. After a hearing, the trial court denied the City's plea.[1] The City then perfected this interlocutory appeal.

## ANALYSIS

The City raises three issues in which it challenges the trial court's denial of its plea to the jurisdiction. Specifically, the City contends the trial court erred in finding Rio Grande had standing, Rio Grande's zoning claims were ripe for adjudication, and Rio Grande's zoning claims were not moot. In a fourth issue, the City asserts the trial court erred by refusing to deny Rio Grande's request for a writ of mandamus with regard to its requests for information.

### *Standing*

The City first contends the trial court erred in finding Rio Grande had standing to bring suit regarding the zoning issues. "Standing is a prerequisite to subject matter jurisdiction, and subject matter jurisdiction is essential to a court's power to decide a case." *Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 553-54 (Tex. 2000). Whether a pleader has alleged facts that affirmatively demonstrate a trial court's subject matter jurisdiction is a question of law we review de novo. *Texas Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex. 2004).

Parties may challenge subject matter jurisdiction by filing a plea to the jurisdiction, which is a dilatory plea that seeks to defeat a claim without regard to the claim's merits. *Bland*, 34 S.W.3d at 554.

---

[1] After orally denying the City's plea, the trial court advised Rio Grande that it should "re-plead as to the comprehensive plan in the way that the City passed it," stating the pleadings were "deficient from that perspective." The trial court further advised that it desired "a better-clear understanding of the injury in fact." Our review, however, is limited to the pleadings and evidence as they existed at the time of the trial court's decision.

A plaintiff is obligated to plead facts affirmatively demonstrating the subject matter jurisdiction of the trial court. *Miranda*, 133 S.W.3d at 226; *see Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 446 (discussing standing). "It has long been the rule that a plaintiff's good faith allegations are used to determine the trial court's jurisdiction." *Frost Nat'l Bank v. Fernandez*, 315 S.W.3d 494, 502-03 (Tex. 2010). Should the pleadings "not contain sufficient facts to affirmatively demonstrate the trial court's jurisdiction, . . . the issue is one of pleading sufficiency and" – as in special exception practice – "the plaintiff[] should be afforded the opportunity to amend." *Miranda*, 133 S.W.3d at 226-27. We liberally construe the plaintiff's petition, looking to the pleader's intent. *Holland*, 221 S.W.3d at 642-43; *City of Austin v. Leggett*, 257 S.W.3d 456, 461 (Tex. App.—Austin 2008, no pet.). A plaintiff should plead facts supporting jurisdiction although specific allegations about subject matter jurisdiction are not required. *Tex. Dep't of Transp. v. Beckner*, 74 S.W.3d 98, 103-04, 104 n.10 (Tex. App.—Waco 2002, no pet.) (citing *Tex. Ass'n of Bus.*, 852 S.W.2d at 446; TEX. R. CIV. P. 47, 78-82). To determine standing, a court may presume the truth of allegations supporting standing. *Fernandez*, 315 S.W.3d at 503.

However, "[w]hen a plea to the jurisdiction challenges the existence of facts alleged by the pleader to establish the trial court's subject matter jurisdiction, as occurred in this case, the trial court must consider relevant evidence submitted by the parties." *Miranda*, 133 S.W.3d at 227 (citing *Bland*, 34 S.W.3d at 555). This standard generally mirrors that of a traditional summary judgment. *Id.* at 228; TEX. R. CIV. P. 166a(c). Thus, the trial court may consider affidavits and other summary judgment-type evidence. *FKM P'ship v. Bd. of Regents of Univ. of Houston Sys.*, 255 S.W.3d 619, 628 (Tex. 2008). The court takes as true evidence favorable to the nonmovant and indulges every reasonable inference and resolves any doubts in the

nonmovant's favor. *City of Waco v. Kirwan*, 298 S.W.3d 618, 622 (Tex. 2009). It is for the defendant to assert the absence of subject matter jurisdiction and present conclusive proof that the trial court lacks subject matter jurisdiction. *Miranda*, 133 S.W.3d at 228 (party asserting plea to jurisdiction must meet summary judgment standard of proof); *City of Austin v. Rangel*, 184 S.W.3d 377, 382 (Tex. App.—Austin 2006, no pet.) (defendant must first establish as matter of law absence of subject matter jurisdiction); *Dallas County v. Wadley*, 168 S.W.3d 373, 377, 378-79 (Tex. App.—Dallas 2005, pet. denied) (plaintiffs had no burden on defendant's plea to jurisdiction until defendant met its burden).

If the defendant discharges this burden, the plaintiff must present evidence sufficient to raise a material issue of fact regarding jurisdiction or the plea will be sustained. *Miranda*, 133 S.W.3d at 228; *City of Dallas v. Heard*, 252 S.W.3d 98, 102 (Tex. App.—Dallas 2008, pet. denied). However, as with a traditional motion for summary judgment, if the defendant fails to present conclusive proof of facts negating subject matter jurisdiction, the burden does not shift to the plaintiff to establish the existence of an issue of material fact. *See Wadley*, 168 S.W.3d at 378-79. This means a defendant may not merely offer a pleading denying the existence of jurisdictional facts and by so doing force the plaintiff to present evidence sufficient to raise an issue of fact. *Rangel*, 184 S.W.3d at 382; *cf.* Tex. R. Civ. P. 166a(i) (no-evidence motion for summary judgment). The plaintiff is thus protected from having to put on its case simply to establish jurisdiction. *See Miranda*, 133 S.W.3d at 228; *Wadley*, 168 S.W.3d at 377.

Here, in its live petition, Rio Grande alleged it is a nonprofit corporation composed of members who are Laredo residents. Rio Grande admits its status as a nonprofit corporation requires that it must establish associational standing. The test for associational standing was established by the United States Supreme Court in *Hunt v. Washington State Apple Advertising*

*Comm'n*, and adopted by the Texas Supreme Court in *Tex. Ass'n of Bus. v. Tex. Air Control Bd.* Under this test, an association has standing to bring suit on behalf of its members when:

> (a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit.

*Tex. Ass'n of Bus.*, 852 S.W.2d at 447 (adopting *Hunt*, 432 U.S. 333, 343 (1977)).

As to the first prong of the test, it requires Rio Grande's pleadings to demonstrate its members have standing to sue on their own behalf. *Id*. However, this requirement is not to be interpreted "to impose unreasonable obstacles to associational representation." *Id*. The purpose of the first prong is "'simply to weed out plaintiffs who try to bring cases, which could not otherwise be brought, by manufacturing allegations of standing that lack any real foundation.'" *Id*. (quoting *New York State Club Ass'n v. City of New York*, 487 U.S. 1, 9 (1988)). That members are subject to a "substantial risk of injury" is sufficient under the Supreme Court's mandate in *Hunt*. *Tex. Ass'n of Bus.*, 852 S.W.2d at 447 (citing *Pennell v. City of San Jose*, 485 U.S. 1, 7 n.3 (1988) (concluding association of landlords had standing based on pleadings that individual landlords would likely be harmed by rent ordinance)). Moreover, and contrary to the City's unsupported assertion, it is not necessary that Rio Grande show all its members are subject to a substantial risk of injury; rather, it is sufficient that Rio Grande demonstrate any one of its individual members are suffering threatened injury as a result of the challenged ordinances. *Tex. Workers' Comp. Comm'n v. Garcia*, 862 S.W.2d 61, 71 (Tex. App.—San Antonio 1993), *rev'd on other grounds*, 893 S.W.2d 504 (Tex. 1995)).

Having reviewed Rio Grande's pleadings and given the applicable standard of review, we hold Rio Grande has not "manufactured" its allegations. It is undisputed that the contested ordinances have been passed, changing the area in question from residential and agricultural to

light manufacturing. It is also undisputed that some Rio Grande members own real property within 200 feet of the rezoned areas. Rio Grande alleged these members, as well as members who own property along the Rio Grande River, whose waters Rio Grande alleges are threatened by potential pollution due to the rezoning, will be adversely affected by the pollution, litter, noise, light, traffic, dust, and other disturbances likely to result from the rezoned areas. Although we agree that from the record it does not appear that manufacturing has begun or that any of the risks asserted by Rio Grande on behalf of its members have come to fruition, the record does establish the City's intention to allow light manufacturing in the rezoned areas (or else, why rezone it at all?). This subjects certain members of Rio Grande to at least a "substantial risk of injury," i.e., diminishment of property enjoyment and property values, satisfying the first prong of the *Hunt* test. The risk of injury is unique to the Rio Grande property owners, several of whom reside in close proximity to the rezoned area or the Rio Grande River and Sombrerito Creek, as opposed to the effect the rezoning may have on the public as a whole.

The City argues the allegations are insufficient to confer standing because they do not allege an "injury-in-fact." We disagree. Rio Grande's allegations are more than "blanket assertions of hypothetical injuries." They are, in fact, the type of allegations that have been held sufficient to confer standing. *See, e.g., Hays County v. Hays County Water Planning P'ship*, 106 S.W.3d 349, 357 (Tex. App.—Austin 2003, no pet.) (holding partnership satisfied first prong of *Hunt* test where it alleged individual members lived or owned property in relevant area and were covered by prospective transportation plan that would result in roadway development, subjecting individuals to economic loss of property value); *Lake Medina Conserv. Soc'y v. Tex. Nat. Res. Conserv. Comm'n*, 980 S.W.2d 511, 516 (Tex. App.—Austin 1998, pet. denied) (holding association satisfied first prong of *Hunt* test where it alleged individual lakeside property owners

- 8 -

and businesses would suffer injury due to administrative action that would cause lake levels to drop). Even in *Save Our Springs Alliance v. City of Dripping Springs*, the case relied upon by the City to support its argument that Rio Grande does not have standing, the court of appeals, in holding The Save Our Springs Alliance lacked standing, noted that none of its individual members possessed a property interest that was affected by the harms asserted in the suit. 304 S.W.3d 871, 879-84 (Tex. App.—Austin 2010, pet. denied). And, in reaching its decision, the court distinguished cases in which courts held there was a risk of injury to individual association members, i.e., individual members had standing, by noting that in those cases, the association in question demonstrated individual members owned property interests subject to the harm alleged. *Id.* at 879-80. Unlike the individual members in *Save Our Springs*, the allegations in this case are that individual members own property in the affected areas, giving them a "concrete and particularized" risk of injury different from that of the general public, and sufficient to confer standing under the Uniform Declaratory Judgment Act. *Id.* 879-882, 893 n.8; *see* TEX. CIV. PRAC. & REM. CODE ANN. §§ 37.001-.011 (West 2008).

Accordingly, we hold Rio Grande alleged sufficient facts, which were unchallenged by the City, demonstrating its individual members, or at least one of them, could sue in their own right. This satisfies the first prong of the *Hunt* associational standing test.

The City contends that even if Rio Grande satisfies the first prong of the associational standing test, it cannot satisfy the second prong, which requires Rio Grande to show the interests it seeks to protect are germane to the organization's purpose. *See Tex. Ass'n of Bus.*, 852 S.W.2d at 447 (adopting *Hunt*, 432 U.S. at 343). We disagree.

In its original petition, Rio Grande pled that among its goals are "preserving and enhancing the water quality of the Rio Grande and its local tributaries," and preservation of . . .

low-density residential area near the Rio Grande." These are some of the very interests Rio Grande contends will be damaged by the City's decision to rezone. Thus, we hold the interests Rio Grande seeks to protect through its lawsuit are germane to its organizational purpose.

Finally, as to the third prong of the *Hunt* test, which requires that neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit, the City argues, in a single sentence, that "[Rio Grande] cannot bring this lawsuit without the property interest of its members, and in fact, is completely dependent on their participation." *Id.* We agree with Rio Grande that the City misunderstands the requirement imposed by this prong of the test.

The Supreme Court has interpreted this prong to mean that whether an association has standing to invoke the court's remedial powers on behalf of its individual members depends substantially on the nature of the relief sought. *Hunt*, 432 U.S. at 343. If an association seeks a declaration, injunctive, or some other type of prospective relief, the court can assume the remedy sought, if granted, will benefit the association members who are injured by the alleged harms. *Id*. In other words, the third prong inquires as to whether the relief sought by the association necessitates that each individual member of the association prove a distinct injury to obtain relief. *See Tex. Ass'n of Bus.*, 852 S.W.2d at 447. In *Warth v. Seldin*, 422 U.S. 490, (1975), the Court held standing did not exist because the association that brought suit sought damages on behalf of its individual members, necessitating that each individual member prove damages particular to himself or herself. However, in *Tex. Ass'n of Bus.*, the court found the third prong was satisfied because the Association sought only prospective relief that did not require proof of the individual circumstances of its members to obtain that relief. 852 S.W.2d at 448. The same is true here, Rio Grande seeks prospective relief in the form of a declaration that the enacted

zoning ordinances were invalid, relief that is not dependent on proof of the individual circumstances of its members. Accordingly, Rio Grande satisfied the third prong.

Based on the foregoing, we hold Rio Grande established all prongs of the associational standing test, and we overrule the City's standing issue.

### *Ripeness*

In its second issue, the City contends the trial court erred in denying its plea to the jurisdiction because Rio Grande's claims are not ripe, arguing they are "completely predicated on hypothetical injuries and contingent on further government approvals."

Ripeness, like standing, is a component of subject matter jurisdiction, "and like standing emphasizes the need for a concrete injury for a justiciable claim to be presented." *Waco Indep. Sch. Dist. v. Gibson*, 22 S.W.3d 849, 851 (Tex. 2000) (quoting *Patterson v. Planned Parenthood of Houston*, 971 S.W.2d 439, 442 (Tex. 1998)). Standing focuses on who may bring an action, while ripeness examines when an action may be properly brought. *Patterson*, 971 S.W.2d at 442. In determining whether a claim is ripe, the court must ask "whether the facts have developed sufficiently so that an injury has occurred or is likely to occur, rather than being contingent or remote." *Id*. "Ripeness thus focuses on whether the case involves 'uncertain or contingent future events that may not occur as anticipated, or indeed may not occur at all.'" *Id*. (quoting 12A Wright, et al., FEDERAL PRACTICE AND PROCEDURE § 3532.1, 112 (2d ed. 1984)). "A case is not ripe when its resolution depends on contingent or hypothetical facts, or upon events that have not yet come to pass." *Patterson*, 971 S.W.2d at 442. Requiring a matter to be ripe conserves judicial time and resources, reserving them "'for real and current controversies, rather than abstract, hypothetical, or remote disputes.'" *Id*. at 443 (quoting *Mayhew v. Town of*

*Sunnyvale*, 964 S.W.2d 922, 928 (Tex. 1998)). And, it prevents courts from becoming entangled in abstract disagreements. *Patterson*, 971 S.W.2d at 443.

We examine the ripeness of Rio Grande's claims in light of the principles stated above. In its live pleading, Rio Grande alleged the City improperly passed two zoning ordinances in violation of its Comprehensive Plan, rezoning the property in question from residential and agricultural to light manufacturing. Rio Grande contended the rezoning will adversely affect individual members of Rio Grande who live within 200 feet of the rezoned area because of the water pollution, litter, noise, light, traffic, dust, and odor generated by the industrial activities authorized by the rezoning. Rio Grande further alleged the rezoning would diminish such members' real property values, their use and enjoyment of their properties, and would diminish the suitability of the properties for low-density residential use.

Rio Grande also claimed that one or more of its members own real property immediately adjacent to the Rio Grande River, which is threatened by pollution due to activities authorized by the passage of the zoning ordinances, threatening members use of the river for recreational purposes, including fishing and bird watching. The same claims were made based on property owned by members near Sombrerito Creek. Rio Grande also noted that all of its members were residents of the City of Laredo, which depends on the river for drinking and domestic water use, and the rezoning of the property to light manufacturing threatens imminent harm to the river and the nearby creek. According to Rio Grande, the Comprehensive Plan set up a low-density residential buffer zone for areas near the river to avoid these problems, and the decision to rezone destroys the buffer in derogation of the Comprehensive Plan.

The City argues these alleged injuries are merely potential or hypothetical injuries, dependent upon further government approvals, rendering the Rio Grande claims unripe. The

City contends these potential injuries do not exist now, and may not exist in the future, and making any decision in this case would be nothing more than a constitutionally prohibited advisory opinion, i.e., deciding an abstract legal question without binding the parties. *See Tex. Ass'n of Bus.*, 852 S.W.2d at 444 (noting supreme court has construed Texas Constitution's separation of powers article to prohibit courts from issuing advisory opinions). In support of its argument, the City again relies upon *Save Our Springs Alliance*. In that case, The Save Our Springs Alliance brought suit seeking to prevent development in the Barton Springs Zone, and alleging the City of Austin granted development permits in violation of a city ordinance. 149 S.W.3d at 677. The City filed a plea to the jurisdiction contending, among other things, that the suit was unripe.

On appeal, the court of appeals agreed the matter was not ripe, stating that the particular nature of the statutory scheme at issue required that individual development permits actually be issued or denied before a controversy would be ripe, that The Save Our Springs Alliance had not alleged that permits had been issued or denied by the body with the authority to do so, and that under the statutory scheme in question, a granting of a permit did not automatically result in immediate development. *Id.* at 683-85. We find this case distinguishable.

Here, part of Rio Grande's suit concerns the passage of the zoning ordinances in derogation of the Comprehensive Plan. Section 211.004(a) of the Local Government Code provides that "[z]oning regulations must be adopted in accordance with a comprehensive plan. . . ." TEX. LOC. GOV'T CODE ANN. § 211.004(a) (West 2008). The City's alleged failure to pass the zoning regulations at issue is therefore an act that has occurred, contrary to the absence of issued permits in *Save Our Springs*. *See id.* We find the cases relied upon by Rio Grande more analogous to the situation presented in this appeal.

Rio Grande cites numerous cases in which a municipality passed ordinances in violation of established and mandatory procedures, and those claims were not dismissed on the ground they did not give rise to ripe, justiciable controversies.  *See, e.g., City of Wichita Falls v. L.J. & Frances Streetman*, 607 S.W.2d 644, 648 (Tex. Civ. App.—Fort Worth 1980, no writ) (affirming declaratory judgment finding city's ordinance restricting location of mobile homes void because of failure to publish required notice); *J.D. Abrams, Inc. v. Sebastian*, 570 S.W.2d 81, 86 (Tex. Civ. App.—El Paso 1978, writ ref'd n.r.e.) (affirming trial court's temporary injunction enjoining permit issued by city where city failed to follow procedural requirements); *Truman v. Irwin*, 488 S.W.2d 907, 909 (Tex. Civ. App.—Fort Worth 1972, no writ) (holding zoning ordinance void because city council failed to comply with notice provisions); *Wallace v. Daniel*, 409 S.W.2d 184, 187-88 (Tex. Civ. App.—Tyler 1966, writ ref'd n.r.e.) (upholding declaratory judgment finding that zoning ordinance changing zoning from single family residential to planned commercial was invalid because city failed to follow procedures in comprehensive zoning ordinance); *Smart v. Lloyd*, 370 S.W.2d 245, 248 (Tex. Civ. App.—Texarkana 1963, no writ) (affirming temporary injunction enjoining change in existing zoning designation because city failed to follow comprehensive zoning plan).  It is irrelevant that in these cases neither party raised the issue of ripeness as subject matter jurisdiction is an issue that cannot be waived, and courts are obligated to consider whether subject matter jurisdiction exists whether it is raised by the parties nor not.  *M.O. Dental Lab v. Rape*, 139 S.W.3d 671 673 (Tex. 2004); *Good Shepherd Med. Ctr. v. State*, 306 S.W.3d 825, 837 (Tex. App.—Austin 2010, no pet.); *see also Tex. Bus. Ass'n*, 852 S.W.2d at 443-46.

The declaratory judgment action brought by Rio Grande is a challenge to the City's passage of new zoning ordinances in derogation of the Comprehensive Plan that existed at the

time of the adoption. As did the plaintiffs in the cited cases, Rio Grande asserts the City has committed an improper act and seeks a declaration that the fruits of that act, the new zoning ordinances, are invalid. As established by the cited cases, such claims have been brought for many years and adjudicated. Accordingly, we hold Rio Grande's claims are ripe and the trial court did not err in denying the City's plea to the jurisdiction on the ground that Rio Grande's claims were not ripe.

### *Mootness*

In its final complaint regarding subject matter jurisdiction, the City argues the trial court lacked jurisdiction over Rio Grande's claim that the passage of the zoning ordinances is contrary to the Comprehensive Plan because such claim is moot. Like standing and ripeness, mootness is a component of subject matter jurisdiction. *Krohn v. Marcus Cable Assocs., L.P.*, 201 S.W.3d 876, (Tex. App.—Waco 2006, pet. denied). "A case becomes moot if a controversy ceases to exist or the parties lack a legally cognizable interest in the outcome." *Allstate Ins. Co. v. Hallman*, 159 S.W.3d 640, 642 (Tex. 2005).

The City's mootness argument is based on the fact that after Rio Grande filed the instant suit, the City modified the Comprehensive Plan as permitted by its charter to allow rezoning of the property in question. And, the City argues, because the rezoning now complies with the Comprehensive Plan, Rio Grande's claims are moot, depriving the court of subject matter jurisdiction. Rio Grande responds that the City's "eleventh-hour attempt to rectify its prior unlawful conduct does not moot" the claims because "the City cannot revive a void act."

A city may not enact zoning ordinances in a way that is inconsistent with state zoning law. *Mayhew v. Town of Sunnyvale*, 774 S.W.2d 284, 293-94 (Tex. App.—Dallas 1989, writ denied); *City of San Antonio v. Lanier*, 542 S.W.2d 232, 234 (Tex. App.—San Antonio 1976,

writ ref'd n.r.e.). Texas courts have held ordinances and amendments to ordinances invalid where the express, mandatory provisions of state zoning statutes have not been complied with. *Mayhew*, 774 S.W.2d at 293-94. As we noted in our discussion of the ripeness issue, section 211.004(a) of the Local Government Code provides that zoning regulations must be adopted in accordance with the municipality's comprehensive plan if one exists. TEX. LOC. GOV'T CODE ANN. § 211.004(a); *see City of Brookside v. Comeau*, 633 S.W.2d 790 (Tex. 1982) (holding that if city has no comprehensive zoning plan it may regulate lands under its general police powers). If a municipality fails to adopt zoning ordinances in accordance with its comprehensive plan, such ordinances are void *ab initio*. *Thompson v. City of Palestine*, 510 S.W.2d 579, 581-83 (Tex. 1974) (holding city's decision to "spot zone" void because it was not in accord with comprehensive plan and city failed to show justifiable changes in conditions to permit zoning change); *Bd. of Adjustment of City of San Antonio v. Leon*, 621 S.W.2d 431, 436 (Tex. Civ. App.—San Antonio 1981, no writ) (holding failure of board of adjustment to make specified fact findings and incorporate same into minutes of meeting before granting special exception to zoning ordinance rendered board's action void); *Metzger v. City of San Antonio*, 384 S.W.2d 901, 902-03 (Tex. Civ. App.—San Antonio 1965, no writ) (same); *see Skates v. City of Paris*, 363 S.W.2d 425, 426-27 (Tex. 1963) (holding commission's order sustaining suspension of police officer void where commission failed to find, as required by statute, the specific charges against the officer were true).

It is undisputed in this case that the City has a Comprehensive Plan, that it had such a plan when Rio Grande brought this suit, and that the Comprehensive Plan did not permit the real property in this case to be zoned as light manufacturing. It is also undisputed that the City did not alter its Comprehensive Plan until after Rio Grande filed suit alleging the rezoning violated

the Comprehensive Plan. Based on the cited authorities, because the City did not rezone in accord with its Comprehensive Plan, the ordinances passed to rezone the property were void *ab initio*. "Void *ab initio*" means "null from the beginning." *Commonwealth Land Title Ins. Co. v. Nelson*, 889 S.W.2d 312, 318 (Tex. App.—Houston [14th Dist.] 1994, writ denied). We agree with Rio Grande that because the ordinances were never valid, the City could not revive them by subsequently amending the Comprehensive Plan. *See Smith v. Abbott*, 311 S.W.3d 62, 83 (Tex. App.—Austin 2010, pet. denied) (recognizing that where State Office of Administrative Hearings undertook challenged act before certain required rules were adopted, subsequent adoption of required rules did not validate challenged act).

Moreover, Rio Grande argues, and we agree, that the City's amendment of the Comprehensive Plan after it adopted the new zoning ordinances violates the language and intent of section 211.004(a) of the Local Government Code. By its plain language, that statute requires a municipality to adopt zoning ordinances in accordance with an existing comprehensive plan, not to amend a comprehensive plan to comport with an amended zoning ordinance. *See* TEX. LOC. GOV'T CODE ANN. § 211.004(a). As the court stated in *Mayhew*, where the municipality has a comprehensive plan, "the law is settled that the adopted comprehensive plan must, by statutory mandate, serve as the basis for subsequent zoning amendments." 774 S.W.2d at 294-95; *see City of Pharr v. Tippitt*, 616 S.W.2d 173, 176-77 (Tex. 1981) (holding comprehensive zoning ordinance is law that binds the municipal legislative body, and legislative body does not, on each rezoning hearing, re-determine city's policy of comprehensive planning).

Based on our foregoing analysis, we hold Rio Grande's claims are not moot, and therefore the trial court did not err in denying the City's plea to the jurisdiction on grounds of mootness.

*Writ of Mandamus*

As noted in our discussion of the background of this case, after Rio Grande filed suit, it made requests for public information to the City pertaining to the pending lawsuit. The City claimed it had produced all of the information in its possession. Rio Grande disagreed and filed a petition for writ of mandamus in the trial court to compel the City to produce the public records Rio Grande claimed were not released in response to its previous requests for information.

On appeal, the City contends the trial court erred "by not denying to issue a writ of mandamus." We interpret the City's issue to mean it is complaining that the trial court erred in granting Rio Grande's petition for writ of mandamus. The City then argues Rio Grande's petition should have been denied because Rio Grande lacks standing and the matter is moot. However, we have reviewed the record in its entirety, including the hearing on the plea to the jurisdiction, the petition for writ of mandamus, and the court's written order on this matter, and we hold the trial court neither granted nor denied Rio Grande's petition. Rather, the trial court noted the issues raised by Rio Grande with regard to the Public Information Act were not moot, and Rio Grande would be given an opportunity to depose members of the Laredo City Council and to conduct further discovery. The trial court did not grant the petition for writ of mandamus nor order the City to turn over the information that was the subject of Rio Grande's petition. Rather, the trial court seemingly passed on the matter, deciding to allow the information to be gathered through traditional discovery devices, advising Rio Grande that it would be permitted to file motions to compel in the event information was not forthcoming. Accordingly, in that the trial court did not rule on Rio Grande's petition for writ of mandamus, there is nothing for this court to review.

**SANCTIONS**

In its reply brief, the City contends it is entitled to recover the attorney's fees it incurred in the prosecution of this appeal. The City argues it should not have been required to "waste taxpayer monies defending itself in a suit for which Rio Grande knew it had no standing to bring." Given our disposition, the City's request for sanctions is without merit. Accordingly, we deny the request for attorney's fees.

**CONCLUSION**

We hold the trial court did not err in denying the City's plea to the jurisdiction. We further hold the trial court did not rule on Rio Grande's petition for writ of mandamus, thereby presenting nothing for our review with regard to this issue. Finally, we deny the City's request for attorney's fees. Accordingly, we affirm the trial court's judgment.

Marialyn Barnard, Justice